Josephine L. Staton, United States District Judge
Just over 25 years ago, in December 1992, Petitioner was sentenced to a term of *1356 imprisonment of 35 years (420 months), for his taking part in a murder-for-hire conspiracy. A Supreme Court case decided in April 2018 necessitates reexamination of whether Petitioner was sentenced pursuant to an unconstitutionally vague and/or inapplicable provision of federal criminal law. As explained below, this new case law requires invalidation of 60 months of Petitioner's 420-month sentence of imprisonment.
This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Federal Sentence. (Doc. 1.) Petitioner moves to vacate or modify the federal sentence imposed upon him by this Court on December 18, 1992 in United States v. Richard Marion Dota , SACR 92-00005-JLS-2. The Government filed an Opposition brief. (Doc. 20.) Petitioner filed a Reply brief and supplemental briefing. (Docs. 23-26.)
As set forth below, the Court GRANTS the Motion.
I. Motion to Vacate or Correct Federal Sentence
Petitioner moves pursuant to 28 U.S.C. § 2255, which permits federal prisoners who "claim[ ] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" to file a motion "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The motion must be filed in "the court [that] imposed the sentence." Id.
As a matter of procedure, the Court is required to review the motion to determine whether the moving party may be entitled to relief. See Rule 4(b) of the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. § 2255. If, upon the Court's initial review, "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Id. Otherwise, the Court must order the United States to respond to the motion. Id. Here, the Court set a briefing schedule as to the merits of Petitioner's motion and, after the Supreme Court issued its decision in Sessions v. Dimaya , --- U.S. ----, 138 S.Ct. 1204, 200 L.Ed.2d 549 (2018), granted leave to file supplemental briefing. The issues before the Court are fully briefed, and the Court considers them now.
II. Petitioner's Sentence
The murder-for-hire plot is summarized in the Presentence Investigation Report ("PSR"). (See Doc. 7 (sealed), PSR ¶¶ 25-45.) Briefly, co-Defendant and business owner Julius Frederick Schill sought Defendant's assistance in killing Wilbur Constable, the fiancé of Schill's secretary Asher, a woman whom Schill wished to pursue romantically. Defendant traveled from Las Vegas to Tustin, California, met with Schill, cashed a check given to him by Schill, and then met with another man (co-Defendant Yoon) in order to outsource the "hit" to Yoon. Defendant went back to Las Vegas, but returned shortly thereafter to again meet with Yoon to help plan the "hit." The plan included damaging Constable's car, leaving a business card with the information of the "responsible party," and then luring the unsuspecting Constable to a parking lot behind an office park complex, ostensibly so that the responsible party could pay him for the damage to his car. Although suspicious, Constable went to the parking lot. Constable was himself armed with a handgun, but he was unable to successfully defend himself. Yoon and two others (also co-Defendants) met Constable in the parking lot, beat him with baseball bats, shot him in the back of the head, and left him for dead. Yoon, believing *1357 Constable was dead, reported to Defendant by telephone that he had "hit a homerun." Surprisingly, Constable survived the assault. Unsurprisingly, he was severely injured and hospitalized. When Schill learned from Asher that Constable was still alive, he called Defendant in Las Vegas, who then called Yoon to tell him Constable had survived. In formulating a plan to finish the job, Yoon again telephoned Defendant. The revised plan fell through, and the present prosecution eventually ensued.
On June 24, 1992, after a twenty-one day jury trial, Petitioner was convicted on Counts 1 through 9 of the Second Superseding Indictment. (See CR Doc. 262.) Specifically, Petitioner was convicted of conspiracy to commit murder-for-hire (Count 1), use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2), and seven counts of use of interstate commerce facilities related to murder-for-hire (Counts 3 through 9). (See PSR ¶¶ 9-19.)
On December 18, 1992, the Court held Petitioner's sentencing hearing. (See CR Doc. 303.)[1] The Court sentenced Petitioner to 240 months imprisonment on Count 3; 120 months on each of Counts 4 through 9 (to be served concurrently with each other but consecutive to the term imposed on Count 3); 60 months on Count 1 (to be served concurrently with the terms imposed as to Count 3 and Counts 4 through 9); and 60 months on Count 2 (to be served consecutively to all other Counts). (Id. ) The Court also sentenced Petitioner to 3 years of supervised release. (Id. )
III. Statutory Sentencing Provision
The present Motion addresses the sentence imposed for Count 2. By statute, there is a five-year mandatory prison sentence as to Count 2 that must be imposed consecutively to any other sentence of imprisonment. Specifically, Petitioner was in 1992 convicted of use of a firearm during the commission of a "crime of violence" in violation of 18 U.S.C. § 924(c)(1), which in relevant part provides:[2]
(c)(1)(A) [A]ny person who, during and in relation to any crime of violence ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime ... (i) be sentenced to a term of imprisonment of not less than 5 years ....
18 U.S.C. § 924(c)(1)(A). The mandatory minimum prison sentence imposed for this crime must be served consecutively to any other term of imprisonment. 18 U.S.C. § 924(c)(1)(D)(ii).
The statute itself defines "crime of violence" in two ways:
(c) ... (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and--(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
18 U.S.C. § 924(c)(3)(A)-(B). The first clause, clause (A), is referred to as the "elements clause" or the "force clause,"
*1358 while the second clause, clause (B), is referred to as the "residual clause." See United States v. Collins , No. 16-CV-03345-SI, 2018 WL 368881, at *3 (N.D. Cal. Jan. 11, 2018) ; McCracken v. United States , No. CR 06-00497-GHK, 2017 WL 9676012, at *1 (C.D. Cal. July 27, 2017).
As explained below, recent Supreme Court case law establishes that the residual clause is unconstitutionally vague. Therefore, unless Petitioner's offense also meets the "crime of violence" definition under the elements clause, his conviction on Count 2 is invalid and must be vacated. The Court first discusses the unconstitutionality of the residual clause and thereafter considers whether Petitioner's offense meets the definition of a "crime of violence" under the elements clause.
IV. Residual Clause
In Johnson v. United States , --- U.S. ----, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), the Supreme Court invalidated a similar residual clause defining a "violent felony" under the Armed Career Criminal Act of 1984 ("ACCA"). The ACCA applies a sentencing enhancement when an offender has three convictions for a "violent felony." 18 U.S.C. § 924(e)(1). The residual clause of the ACCA defined a "violent felony" as including, inter alia , felonies that "otherwise involve[ ] conduct that present[ ] a serious risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) ; Johnson , 135 S.Ct. at 2555-56. The Supreme Court held that this residual clause is unconstitutionally vague. Id. at 2563.
More recently, the Supreme Court affirmed a Ninth Circuit opinion and invalidated a similarly worded residual clause found in 18 U.S.C. § 16(b). Sessions v. Dimaya , --- U.S. ----, 138 S.Ct. 1204, 1210, 200 L.Ed.2d 549 (2018). Specifically, Dimaya examined the residual clause of the definition of a "crime of violence" that includes "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Id. at 1211 (quoting 18 U.S.C. § 16(b) ). The Supreme Court applied Johnson and found that the residual clause of § 16(b) had the same "two features" that "conspired to make ACCA's residual clause unconstitutionally vague." Id. at 1216 (internal quotation marks, alteration marks, and citation omitted). That is, like the ACCA residual clause, § 16(b)"requires a court to picture the kind of conduct that the crime involves in the ordinary case, and to judge whether that abstraction presents some not-well-specified-yet-sufficiently-large degree of risk." Id. (citation omitted). Therefore, the Court found § 16(b) unconstitutionally vague. Id.
The residual clause at issue in this case is indistinguishable from § 16(b). In fact, the language used in the clause is identical.[3] A number of courts have recognized that the Supreme Court's holding in Dimaya compels the conclusion that § 924(c)(3)(B) is unconstitutional. See, e.g. , United States v. Eshetu , 898 F.3d 36, 37 (D.C. Cir. 2018) ; ("[Appellants] argue that Dimaya dictates vacatur of their section 924(c) convictions. We agree."); United States v. Salas , 889 F.3d 681, 684-86 (10th Cir. 2018) (" Dimaya 's reasoning for invalidating § 16(b) applies equally to *1359 § 924(c)(3)(B). Section 924(c)(3)(B) is likewise unconstitutionally vague."); United States v. Lettiere , No. CR 09-049-M-DWM, 2018 WL 3429927, at *5 (D. Mont. July 16, 2018) (" Section 924(c)(3)(B), textually identical to § 16(b) and also applied by using categorical analysis, cannot be salvaged. It is unconstitutionally vague."); United States v. Flores , No. 208CR163JCMGWF, 2018 WL 2709855, at *5 (D. Nev. June 5, 2018) ("However, in light of the Supreme Court's holding in Dimaya , there can be no doubt that § 924(c)'s residual clause suffers from the same constitutional deficiencies that caused the Court to strike down the nearly identical residual clause in [ § 16(b) ]."). Moreover, district courts in the Ninth Circuit, having had the benefit of the Dimaya appellate decision, found § 924(c)(3)(B) unconstitutionally vague even before the Supreme Court's opinion. See, e.g. , Gaines v. United States , 248 F.Supp.3d 959, 964 (C.D. Cal. 2017) ; United States v. Lattanaphom , 159 F.Supp.3d 1157, 1162-64 (E.D. Cal. 2016) ; United States v. Bell , 158 F.Supp.3d 906, 921-22 (N.D. Cal. 2016) ; accord United States v. Cardena , 842 F.3d 959, 996 (7th Cir. 2016), cert. denied , --- U.S. ----, 138 S.Ct. 247, 199 L.Ed.2d 159 (2017).
This Court also concludes that application of Johnson and Dimaya compels the conclusion that the residual clause found in § 924(c)(3)(B), defining a "crime of violence," is unconstitutionally vague.
V. Elements Clause
The Government contends Petitioner's sentence is proper under the elements clause, which defines "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).
The shorthand description of Count 1, "conspiracy to commit murder for hire with personal injury resulting," is a misnomer. (See PSR ¶ 9.) In contrast, the shorthand description of Counts 3 through 9 is more precise because it captures more of the statutory language. Counts 3 through 9 are described as the "[u]se of interstate commerce facilities with intent that a murder be committed, and as consideration for a promise with agreement to pay." (Id. ¶ 12.) Growing out of Congress' nearly plenary Commerce Clause power, criminal prohibitions against the use of facilities of interstate commerce coupled with certain action and/or certain intent are common in federal criminal law. (See, e.g. , 18 U.S.C. §§ 1341 & 1343 (mail fraud and wire fraud).) The statutory language of a crime determines its elements, and those elements determine whether the crime falls within the definition of a "crime of violence" found in the elements clause.
Thus, the Court looks first to the statutory language:
Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, *1360 or shall be fined not more than $ 250,000, or both.
18 U.S.C. § 1958.
The jury was given instructions regarding the elements of the offenses charged, and Petitioner has filed copies of the Government's Proposed Instructions and Amended Proposed Instructions.[4] The instruction on the conspiracy charge identified the elements:
First, between the dates charged there was an agreement between two or more persons that a murder be committed in exchange for money or a promise to pay money.
Second, the defendant became a member of the conspiracy knowing of the object and intending to help accomplish it.
Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed; and
Fourth, that the conspiracy, if carried out, would probably cause one or more of the conspirators to travel in or to cause others to travel in interstate commerce, or cause one of more of the conspirators to use or to cause others to use an interstate commerce facility.
(Doc. 1 at 82 (Gov't Amd. Prop'd Instr. No. 22).) The elements of the substantive counts were also defined for the jury:
In order for defendant Dota to be found guilty of these counts, the government must prove beyond a reasonable doubt that first, he travelled from one state to another or used any facility in interstate commerce, as charged; and second, that he acted with the intent that a murder in violation of the laws of California be committed in exchange for money or a promise to pay money.
(Doc. 1 at 87 (Gov't Amd. Prop'd Instr. No. 31).)
Comparing these elements to the definition of a "crime of violence," that is, a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," it becomes clear that the offenses of conviction do not qualify as "crime[s] of violence." 18 U.S.C. § 924(c)(3)(A). Defendant was charged with and convicted of counts that require no more than the existence of a conspiracy, an overt act in furtherance thereof, the requisite intent to kill a person in exchange for something of value, and interstate travel or use of a facility of interstate commerce (such as use of the telephone). Of course, it may sound counter-intuitive to suggest that, when using these phrases in their ordinary sense, that "murder for hire" or is not a "crime of violence." However, as noted earlier, 18 U.S.C. § 1958 does not criminalize murder for hire; rather, § 1958 criminalizes the "travel in interstate ... commerce" or "[u]se [of] the mail or any facility of interstate ... commerce," where such travel or such use are coupled with the requisite intent that a murder be committed in exchange for something of value. 18 U.S.C. § 1958. Likewise, 18 U.S.C. § 1958 does not criminalize conspiracy to commit murder for hire; instead, it criminalizes interstate travel or the use of facilities of interstate commerce in furtherance of such a conspiracy.
Thus, the elements § 1958 clearly do not require that force be used, or that force be attempted, or that a person be threatened with the use of force. In prosecuting violations *1361 of § 1958, the Government need not prove that any person used any degree of force or that any person was injured as a result. Indeed, § 1958 has varying degrees of punishment based upon whether or not injury resulted and whether death resulted. (See 18 U.S.C. § 1958(a) (specifying a maximum sentence of 10 years where no injury results, a maximum sentence of 20 years if injury results, and where death results, a maximum penalty of life imprisonment or the death penalty).)
The Government argues that it is not a "realistic possibility" that it would initiate a prosecution for a violation of § 1958 based only on overt acts that do not involve the use of force, such as meetings between co-conspirators, telephone calls, and the exchange of money. (Opp. at 21.) The Government relies upon Gonzales v. Duenas-Alvarez , 549 U.S. 183, 185, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007), in which the Supreme Court cautioned courts to be realistic in their consideration of various ways in which the elements of a crime could be met, and noted that courts should consider whether there is "a realistic probability, not a theoretical possibility," of prosecution based on the described conduct.[5] Id. at 193, 127 S.Ct. 815. Under § 1958, because of the nature of the conduct it criminalizes, it is likely that prosecutions would be undertaken of cases in which the intended victim was not subjected to force, and where the offenders did not attempt or threaten the use of force. This is because § 1958 criminalizes the actions leading up to the carrying out of a murder for hire, and failed conspiracies-where no one was killed or injured-would be subject to prosecution. By setting forth the three tiers of mandatory minimum sentences, § 1958 itself impliedly contemplates that offenders would be prosecuted even when no injury results. This case is not the case of the mere "application of legal imagination to [statutory language]" that the Supreme Court cautioned against in Duenas-Alvarez. Many actions leading up to a murder for hire are themselves crimes, and can include the payment of money and the cashing of a check, interstate travel to meet with co-conspirators, and telephone conversations between co-conspirators in furtherance of the conspiracy. All of these actions are present in this case and all of these actions fall squarely within the range of conduct that § 1958 is intended to criminalize.
At least two other courts have recently concluded that a violation of § 1958 is a not a "crime of violence" under 18 U.S.C. § 924(c)(3)(A). See, e.g., United States v. Boman , 873 F.3d 1035, 1042 (8th Cir. 2017) ("[M]urder for hire [cannot] constitute a crime of violence ... under the force clause of § 924(c)(3)(A)...."); United States v. Herr , No. 16-CR-10038-IT, 2016 WL 6090714, at *4 (D. Mass. Oct. 18, 2016) ("A person may thus violate 18 U.S.C. § 1958 by mere engagement in interstate commerce with the intent that statute forbids.") (emphasis in the original). The Court agrees with this conclusion. Therefore, as set forth herein, the Court concludes that a conspiracy to violate or a violation of § 1958 does not fit within the definition of a "crime of violence" set forth in 18 U.S.C. § 924(c)(3)(A). Such crimes do not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." Id.
*1362 Therefore, because the residual clause is unconstitutional, and because the elements clause is inapplicable, Petitioner was wrongly convicted of Count 2, use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).
VI. Successive Petition and Procedural Default
Petitioner's successive petition was expressly authorized and his procedural default is excused.
A. Petitioner's Successive Petition Was Authorized by the Ninth Circuit
This is Petitioner's second § 2255 motion. (See CR Doc. 361.) Section 2255 requires that "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain" either newly discovered evidence or a new, retroactive rule of constitutional law. 28 U.S.C. § 2255(h)(1)-(2). The procedure set forth in § 2244 provides that "[b]efore a second or successive application permitted by the section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). Here, Petitioner received authorization from the Ninth Circuit Court of Appeals. (See CR Doc. 388.)
B. Petitioner's Procedural Default is Excused
The Government argues that Petitioner's claim is procedurally defaulted.
A motion under 28 U.S.C. § 2255 may be denied as procedurally defaulted if the claim presented in the motion was not raised on direct appeal. Massaro v. United States , 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review ...."). However, the procedural default is excused if the petitioner shows either (1) "cause and actual prejudice" or (2) "actual innocence." Bousley v. United States , 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Petitioner has established both.
Because the claim Petitioner now raises was novel when he was sentenced in 1992, he has established cause to excuse his default. Case law supporting his argument has only recently developed. It was only after the Supreme Court invalidated the residual clause of the ACCA in Johnson , and certainly after the Supreme Court invalidated the identically worded residual clause of § 16(b), that Petitioner's current claim-that the residual clause of § 924(c)(3)(B) was unconstitutionally vague-lost its novelty. See Johnson , 135 S.Ct. at 2556-60 (plurality opinion) (detailing the history of the Supreme Court's interpretation of the residual clause of the ACCA); Dimaya , 138 S.Ct. at 1210 ("[a]dhering to [the] analysis in Johnson " to invalidate § 16(b)'s residual clause). Indeed, twenty-three years after Petitioner was sentenced, in Johnson , a plurality of the Supreme Court discussed the Court's own failed attempts at interpreting the residual clause of the ACCA, referring to "[n]ine years' experience trying to derive meaning from the residual clause," declaring those attempts "a failed enterprise," and then finding the "shapeless ... provision" void for vagueness. Johnson , 135 S.Ct. at 2560 (plurality opinion).
Moreover, even after Johnson (but before Dimaya ), lower courts were not all in agreement that § 16(b) should be invalidated. See, e.g., United States v. Gonzalez-Longoria , 831 F.3d 670, 672 (5th Cir. 2016) (en banc) (upholding § 16(b) ), vacated *1363 by --- U.S. ----, 138 S.Ct. 2668, 201 L.Ed.2d 1047 (2018). And certainly courts continue to be divided on the constitutionality of the specific residual clause at issue here, § 924(c)(3)(B). Compare, e.g., Ovalles v. United States , 905 F.3d 1231, 1234-35 (11th Cir. 2018) (residual clause constitutional), United States v. Prickett , 839 F.3d 697, 700 (8th Cir. 2016) (same), cert. denied , --- U.S. ----, 138 S.Ct. 1976, 201 L.Ed.2d 247 (2018), and United States v. Taylor , 814 F.3d 340, 375-80 (6th Cir. 2016) (same), cert. denied , --- U.S. ----, 138 S.Ct. 1975, 201 L.Ed.2d 247 (2018), reh'g denied , --- U.S. ----, 138 S.Ct. 2646, 201 L.Ed.2d 1045 (2018)with United States v. Eshetu , 898 F.3d 36, 37 (D.C. Cir. 2018) (residual clause unconstitutional), United States v. Salas , 889 F.3d 681, 684-86 (10th Cir. 2018) (same), pet. for cert. filed October 3, 2018 (S.Ct. Case No. 18-428), and United States v. Cardena , 842 F.3d 959, 995-96 (7th Cir. 2016) (same), cert. denied , --- U.S. ----, 138 S.Ct. 247, 199 L.Ed.2d 159 (2017). Thus, Petitioner has established cause.
He has also established prejudice. The record reflects, and the Government concedes, that Petitioner suffered prejudice in the form of imposition of a five-year mandatory-minimum sentence of imprisonment that was required to be imposed consecutively. (See Opp. at 8); 18 U.S.C. § 924(c)(1)(A)(i) (requiring mandatory minimum sentence of imprisonment to run consecutively to sentence of imprisonment as to underlying counts) ). Because Petitioner has established both cause and actual prejudice, his procedural default is excused.
Petitioner has also established actual innocence. "To establish actual innocence for the purposes of habeas relief, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Alaimalo v. United States , 645 F.3d 1042, 1047 (9th Cir. 2011). Where intervening case law invalidates the legal basis for his conviction, a petitioner is "actually innocent" and is not precluded from raising a claim not raised on direct appeal. See id. (finding petitioner was "actually innocent" where intervening case law overturned existing precedent and held that petitioner's actions in transporting methamphetamine from California to the Territory of Guam could not form the basis for federal conviction for "importation" of methamphetamine). Therefore, Petitioner's procedural default is also excused under "actual innocence" standard.
Accordingly, there are no procedural obstacles to Petitioner's claim.
VII. Conclusion
For the reasons set forth herein, the Court GRANTS Petitioner's Motion to Vacate, Set Aside, or Correct Sentence. (CV Doc. 1; CR Doc. 390.)
Petitioner's conviction on Count 2, use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), is HEREBY VACATED.
The Judgment and Commitment (CR Doc. 304) is AMENDED to STRIKE the sentence imposed as to Count 2, specifically: "and 60 months on count 2, to be served consecutively to counts 1 and 3 through 9."
Habeas counsel states that if Petitioner is eligible for certain "good time" credit, 18 U.S.C. § 3624(b)(1), he is past due for release from prison. Based on the date of arrest of January 6, 1992, a 360-month sentence, all available good time credit,[6] and the Court's calculation, it appears that *1364 this may be correct. The Bureau of Prisons ("BOP") is directed to recalculate Petitioner's sentence in light of this Order; specifically, the BOP is directed to recalculate Petitioner's sentence in light of a 60-month reduction of the 420-month sentence originally imposed on December 18, 1992.
WITHIN TEN (10) DAYS OF THE ENTRY OF THIS ORDER, THE BOP IS ORDERED TO NOTIFY PETITIONER RICHARD MARION DOTA AND HIS HABEAS COUNSEL OF PETITIONER'S RELEASE DATE, AS RECALCULATED. SHOULD THAT RECALCULATION YIELD A RELEASE DATE IN THE PAST, THE BOP IS ORDERED TO RELEASE PETITIONER FORTHWITH.
IT IS SO ORDERED.

Where a docket entry appears in the record in the underlying criminal case only, the Court cites to it as "CR Doc." to distinguish it from citations to the record in the § 2255 case, which are cited to as "Doc.".

The Court quotes the statute as it appears today. The relevant text is unchanged from 1992, although subsections have been added.

Compare 18 U.S.C. § 16(b) (defining a "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense") with 18 U.S.C. § 924(c)(3)(B) ( (defining a "crime of violence" as "an offense that is a felony and ... (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense").

Neither party has filed copies of the jury instructions as given. The Government has not argued that the instructions given were substantially different than those it proposed. The proposed jury instructions accurately state the law.

The Government has, in fact, prosecuted at least one such case. See United States v. Cristobal , No. LACR 13-00094-JLS (C.D. 2013) (Indictment, Doc. 30). In Cristobal , a conspirator unknowingly came into contact with an informant who sought assistance from an undercover federal law enforcement officer. Id. The officer was hired as the hit man, and the conspiracy quickly unraveled. Id.

The Court expresses no opinion regarding whether Petitioner is entitled to good time credit. That determination is made by the BOP. 18 U.S.C. § 3624(b)(1).