UNITED STATES of America, Appellee,

v.

Frederick G. NORTON,
Defendant, Appellant.

No. 86–1162.

United States Court of Appeals,
First Circuit.

Argued Oct. 6, 1986.

Decided Jan. 12, 1987.

As Amended Jan. 15, 1987.

Steven D. Silin with whom Jack H. Simmons, Paul F. Macri and Berman, Simmons & Goldberg, P.A., Lewiston, Me., were on brief, for appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Portland, Me., and William H. Browder, Jr., Asst. U.S. Atty., Bangor, Me., were on brief, for appellee.

Before COFFIN, Circuit Judge, BROWN,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

This case asks us to decide whether the word "intimidate," as used in a federal criminal explosives statute, 18 U.S.C. § 844(d), encompasses an effort to frighten someone with a firecracker. We conclude that it does not.

The basic facts are as follows: The appellant, Frederick Norton, a firearms dealer, kept a radar detector in his car. When someone stole the detector, Norton became angry at the unknown thief, and he decided to lay a trap. Norton bought another detector from a friend, but this one was a fake. Instead of a detecting mechanism, it contained a kind of firecracker and indelible ink. Norton said that he expected someone to steal the detector and to plug it into a socket; the firecracker would then explode, spraying ink upon the unsuspecting thief.

Just as Norton expected, someone stole the radar detector. Norton reported the theft to the police, but he did not tell them about the trap. Perhaps to Norton's surprise, the police found the thief and recovered the detector. A state trooper then

* Of the Fifth Circuit, sitting by designation.

tested the detector in his car. He plugged it in, and it worked, but not quite as Norton says he planned. Instead of simply spraying ink, the detector exploded, cutting three gashes into the trooper's leg and spraying ink into the eyes of his cousin, who was in the car. The cousin recovered quickly after washing out his eyes; the trooper's gashes required several stitches.

Subsequently, the United States Attorney indicted Norton, charging him with having violated three statutes, including 18 U.S.C. § 844(d). That statute says, in relevant part:

> Whoever transports ... in interstate ... commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual ... shall be imprisoned for not more than ten years....

The court directed a verdict in Norton's favor on the first two counts of the indictment. The jury convicted on the last, § 844(d), count. The court then sentenced Norton to 90 days' imprisonment plus probation. Norton appeals his conviction.

Norton's sole argument is that the judge made a critical mistake when he instructed the jury about the meaning of the word "intimidate." The judge said that it means "to scare or frighten a person for an improper purpose." Norton says that the instruction was wrong because the word "intimidate," as used in this statute, necessarily includes the added notion of affecting future behavior. That is why he asked the judge to tell the jury that intimidation "must be for coercive purposes." Norton says that the error mattered because, according to his own testimony, he intended to hurt no one; *all* he intended to do was to frighten the thief, but the instruction allowed the jury to convict him anyway. Thus, Norton concludes, the judge's failure to give his requested instruction, or something like it, was a critical legal mistake.

■ We accept Norton's interpretation of the word "intimidate," as used in this statute, for the following reasons. First, the statute's basic purpose suggests that it was not designed to punish pure 'frighten-

ing' without any element of intent to injure, or to affect future conduct, or to cause some other sort of relatively serious harm. The Explosives Control Act of 1970, of which § 844(d) is an important part, governs serious crimes. The statute imposes penalties of up to ten years in prison (up to twenty years if personal injury results). It represents a congressional response to threats of terrorist bombings. *United States v. Gelb*, 700 F.2d 875, 878 (2d Cir.), *cert. denied*, 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983); *United States v. Gere*, 662 F.2d 1291, 1296 (9th Cir.1981); H.R.Rep. No. 1549, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4007, 4013 ("Bombings and the threat of bombings have become an ugly, recurrent incident of life in cities and on campuses throughout our Nation."). It provides "Federal jurisdiction over the criminal use of explosives (e.g., extortion, terrorism, and revenge)." H.R.Rep. No. 678, 97th Cong., 2d Sess. 1, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2631, 2631, *citing* Hearings on H.R. 17154, H.R. 16699, H.R. 18573 and Related Proposals to amend Title 18 of the United States Code to provide for better control of traffic in explosives, before Subcomm. No. 5 of the House Comm. on the Judiciary, 91st Cong., 2d Sess. (1970). Nothing in the statute's history suggests an intent to make unlawful the transportation of a firecracker across a state line solely for the purpose of scaring a relative, friend, or neighbor. To the contrary, state laws and *other* federal statutes, carrying lighter penalties, specifically deal with firecrackers. *See* 18 U.S.C. § 836 (federal crime to transport fireworks into state for use in violation of laws of that state; maximum penalty one year imprisonment and/or $1,000 fine). To accept the government's interpretation of the word "intimidate" would trivialize § 844(d), extending its reach to pranksters, to those who simply intend to scare their friends or relations and who will not likely realize that doing so is potentially a serious federal crime.

Of course, to read the statute broadly (so as to include conduct beyond its intended reach) might nonetheless be necessary if doing so were the only way to include the conduct that the statute does in fact seek to forbid. But such is not the case here. Rather, Norton's reading *both* avoids trivializing the statute and at the same time preserves the statute's ability to meet all of its significant objectives. The statute forbids transportation of an explosive "with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property...." This language is broad enough, under either definition of "intimidate," to cover any serious offender likely to cause any significant public harm (including the government's fanciful case of a person who sets off an atom bomb just to frighten people).

Second, as far as we can tell, Norton's interpretation of the word "intimidate" creates no statutory anomaly. We have traced other appearances of the word "intimidate" in the criminal code (see Appendix). And, we have found no instance in which interpreting that word to include the notion of affecting conduct would be inconsistent with the relevant statute's intent.

Third, Norton's interpretation is consistent with the dictionary definition of "intimidate." Webster's Third New International Dictionary (1976) defines "intimidate" as "to make timid or fearful; inspire or affect with fear; *esp.* to compel to action or inaction (as by threats)." The Unabridged Oxford English Dictionary (1933) says about the same: "to render timid, inspire with fear; to overawe, cow; in modern use *esp.* to force to or deter from some action by threats or violence." Black's Law Dictionary (5th ed. 1979) places first the meaning that Webster's flags with "especially" ("*esp.*") and that the OED calls typical "in modern use"; it says intimidation amounts to "unlawful coercion; extortion; duress; putting in fear." Certainly, the possibility exists of using the word to refer *simply* to 'putting in fear' or 'cowing.' Still, the more plausible common modern legal usage

invokes an element of affecting future behavior.

Fourth, the history of the statute leans, at least slightly, in Norton's favor. A predecessor statute of § 844(d) forbade transportation of an explosive

> with knowledge or intent that it will be used to damage or destroy any building or other real or personal property for the purpose of interfering with its use for educational, religious, charitable, residential, business, or civic objectives *or of intimidating any person pursuing such objectives.*

18 U.S.C. § 837(b) (repealed 1970) (emphasis added). The underscored language, in context, suggests somewhat more strongly than the present language an effort to coerce or to affect behavior. And, the legislative history of the present law shows that the change in language had no particular relevance to the "coercive/noncoercive" problem. Rather, Congress changed the language simply because it wished to eliminate the need to prove one of the listed objectives, "in the belief that a more simple standard will facilitate proof at trial." H.R.Rep. No. 91–1549, 1970 U.S.Code Cong. & Admin.News, *supra,* at 4045; *see also* Hearings on H.R. 17154 ..., *supra,* at 36 (statement of Assistant Attorney General Wilson) (amendment "would abolish the test of specific forbidden purposes in favor of a general requirement of knowledge or intent that the explosives are to be used in substantially any crime of violence.").

Fifth, the caselaw precedent is consistent with our conclusion. Norton has found one case in which a court said that intimidation "denote[s] two kinds of coercion." *Allis-Chalmers Co. v. Iron Molders' Union No. 125,* 150 Fed. 155, 173 (E.D.Wis.1906), *modified on other grounds,* 166 Fed. 45 (7th Cir.1908). The government has found two cases in which the courts defined intimidation more broadly. *United States v. Jacquillon,* 469 F.2d 380, 385 (5th Cir.1972), *cert. denied,* 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973) ("to make fearful or to put into fear"); *United States v. Baker,*

129 F.Supp. 684, 685 (S.D.Cal.1955) ("putting in fear"). But, in all these cases, coercion was inherent in the conduct charged; the possibility of using explosives simply to frighten did not exist; hence the court did not focus on the issue presented here. *Allis-Chalmers,* 150 Fed. at 173–74 (coercion by force of numbers can constitute intimidation as fully as coercion by threat to do an unlawful act); *Jacquillon,* 469 F.2d at 385 (handing over note claiming possession of a gun during bank robbery is intended to produce fear and is thus intimidation); *Baker,* 129 F.Supp. at 687 (threatening teller that "there won't be any trouble" if she cooperates with bank robbery is intimidation even if robber is unarmed).

In sum, Norton's interpretation seems better to carry out Congress's intent in enacting this statute by avoiding its trivialization and extension to circumstances where its application seems unfair and totally unnecessary to carry out its purposes. At the same time, that interpretation is consistent with other criminal statutes using similar language, with dictionary definitions, with the history of the statute and with prior case law. We therefore conclude that it is correct.

■ We note that, contrary to the government's contention, the error in the instruction was not harmless. Rather, the instruction was critically important. The court made clear to the jury that it could convict Norton even if it thought he did not intend to harm or injure anyone. The jury paused in its deliberations and asked the court whether it must find that Norton intended *both* to injure *and* to intimidate, and the court reassured the jury that an intent to intimidate alone was sufficient for conviction. At the same time, Norton testified that he intended to hurt no one, and that he did not intend to affect the thief's behavior in any way. Tr. at 197–99. Rather, he intended simply to frighten the thief. Thus, the jury may have convicted Norton on the belief that he intended no more than to scare the thief, perhaps to get revenge. The verdict must therefore be set aside. *Zant v. Stephens,* 462 U.S. 862, 881, 103

S.Ct. 2733, 2744, 77 L.Ed.2d 235 (1983) ("[A] general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground."); *United States v. Herbert,* 698 F.2d 981, 986 (9th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983) (error not harmless where "there is a reasonable possibility that error materially affected the verdict").

Finally, the government argues that the court cured any mistake in its definition when it added (after "to scare or frighten") the words "for an improper purpose." We do not understand, however, how the added words cure the problem. For one thing, they suggest a highly subjective standard. Is frightening a thief proper? Is frightening a parent, a sister, or a neighbor improper? Regardless, the statute refers not to the propriety of an offender's motive, but to the knowledge and intent with which he acts.

*The verdict of the jury is set aside, the judgment of the district court is vacated and the cause is remanded to the district court for further proceedings consistent with this opinion.*

### APPENDIX

*United States Criminal Statutes Using the Word "Intimidate"*

18 U.S.C. § 111 (assault, etc. on federal officers or employees)

18 U.S.C. § 112 (intimidation, coercion, etc. of foreign officials)

18 U.S.C. § 115 (kidnapping with intent to intimidate, etc. federal official)

18 U.S.C. § 241 (conspiracy against rights of citizens)

18 U.S.C. § 245 (federally protected activities)

18 U.S.C. § 372 (conspiracy to impede or injure officer)

18 U.S.C. § 593 (armed forces interference with rights of suffrage)

18 U.S.C. § 594 (intimidation of voters)

18 U.S.C. § 606 (intimidation to secure political contributions)

18 U.S.C. § 831 (obtaining nuclear material by improper means)

18 U.S.C. § 844 (transportation of explosives with intent to intimidate)

18 U.S.C. § 874 (kickbacks from public works employees)

18 U.S.C. § 970 (occupation or breach of foreign embassy with intent to intimidate, etc.)

18 U.S.C. § 1503 (influencing juror or judicial officer)

18 U.S.C. § 1512 (tampering with witness, victim, informant)

18 U.S.C. § 1860 (influencing bids at land sales)

18 U.S.C. § 2111 (robbery in territorial jurisdiction)

18 U.S.C. § 2113 (bank robbery)

18 U.S.C. § 2118 (robbery involving controlled substance)

18 U.S.C. § 2193 (mutiny at sea)

18 U.S.C. § 2231 (interference with search warrant)

18 U.S.C. § 3077 (reward for information on terrorists)