**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50206 |
| *Plaintiff-Appellee*, | D.C. Nos. 2:20-cr-00417-ODW-1 2:20-cr-00417-ODW |
| v. | |
| DAVID LINEHAN, | |
| *Defendant-Appellant*. | |
| | OPINION |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted May 20, 2022
Pasadena, California

Filed December 22, 2022

Before: Kenneth K. Lee and Daniel A. Bress, Circuit
Judges, and Sidney A. Fitzwater,[*] District Judge.

---

[*] The Honorable Sidney A. Fitzwater, United States District Judge for
the Northern District of Texas, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel affirmed David Linehan's conviction for soliciting the transportation of an explosive device in commerce with the knowledge or intent that it would be used to kill, injure, or intimidate a person or damage property, in violation of 18 U.S.C. §§ 373(a) and 844(d); reversed his conviction for soliciting the use of facilities of commerce with the intent that a murder be committed, in violation of 18 U.S.C. §§ 373(a) and 1958(a); and remanded for resentencing, in a case in which Linehan, while in prison on federal charges, solicited others to deliver a bomb to the home of a witness who had testified against him at his criminal trial.

Section 373(a) punishes the solicitation of federal crimes that have "as an element the use, attempted use, or threatened use of physical force against property or against the person of another." The panel addressed whether, under the categorical approach, transportation of an explosive (§ 844(d)) and using a facility of interstate commerce with intent that a murder be committed (§ 1958(a)) are crimes of violence under § 373(a).

The panel held that a violation of § 844(d) is a categorical match to § 373(a). Rejecting an argument in which Linehan relied on *United States v. Taylor*, 142 S. Ct. 2015 (2022), which held that attempted Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c)(3)(A), the panel noted

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that Linehan was not convicted of soliciting the *attempted* transportation of an explosive; he was convicted of soliciting the completed offense.  The panel concluded that a violation of § 844(d) requires the defendant to have undertaken a substantial step toward the use of violent force, which means that a violation of § 844(d) categorically requires the attempted use of physical force within the meaning of § 373(a).  The panel rejected Linehan's argument that if the "attempted use" of force is the source of § 373(a) liability, the court must import a specific intent mens rea that is associated with attempt offenses, so that a predicate offense like § 844(d) that requires merely "knowing" misconduct is insufficient.  The panel wrote that even if "attempted uses" of force did require a higher mens rea, § 844(d) contains a mens rea requirement that enables it to categorically qualify as an attempted use of force.

The panel held that, as the government now concedes, a violation of § 1958(a) does not qualify as a crime of violence under § 373(a) because, as the Solicitor General conceded in *Grzegorczyk v. United States*, 142 S. Ct. 2580 (2022), § 1958(a) does not require that a defendant actually enter into a murder-for-hire agreement, that he carry out or otherwise attempt to accomplish his criminal intent, or that the contemplated murder be attempted or accomplished by another person.

**COUNSEL**

Elizabeth Richardson-Royer (argued), San Francisco, California, for Defendant-Appellant.

Mark R. Rehe (argued), Carling Donovan, Fred Sheppard, and Daniel E. Zipp, Assistant United States Attorneys; Merrick B. Garland, United States Attorney General, Office of the United States Attorney, San Diego, California, for Plaintiff-Appellee.

**OPINION**

BRESS, Circuit Judge:

While in prison on federal charges, David Linehan solicited others to deliver a bomb to the home of a witness who had testified against him at his criminal trial. The federal solicitation statute, 18 U.S.C. § 373, punishes the solicitation of federal crimes that have "as an element the use, attempted use, or threatened use of physical force against property or against the person of another," which is to say violent crimes. In this case, we address whether, under the categorical approach, two predicate crimes—transportation of an explosive, 18 U.S.C. § 844(d), and using a facility of interstate commerce with intent that a murder be committed, 18 U.S.C. § 1958(a)—are crimes of violence under § 373(a).

We hold that a violation of § 844(d) is a categorical match to § 373(a), but that a violation of § 1958(a) is not, a point the government now concedes. We affirm in part, reverse in part, and remand for resentencing.

I

In 1989, David Linehan was involved in a serious car accident in Florida. *United States v. Linehan*, 835 F. App'x 914, 915–16 (9th Cir. 2020). David Sims, a Florida State Trooper, arrived at the scene and cited Linehan for careless driving. Linehan disputed the citation, and a state court held a hearing at which Sims testified. The state court found that Linehan was at fault for the accident and fined him less than $200.

Tragically, the other driver in the accident later committed suicide. *Linehan*, 835 F. App'x at 916. Linehan came to believe that Sims unfairly blamed him for the other driver's death. *Id.* Linehan's automobile insurance policy was also used to compensate the other driver's estate. In connection with those proceedings, Linehan was involved in "contentious litigation" over his own culpability for the accident and the other driver's death. Somewhat improbably, Linehan developed an obsession with Sims over this incident and spent years harassing and threatening him.

In 2001, Linehan moved to China. He also lived for periods in Thailand, Hong Kong, and Cambodia. While in Asia, Linehan continued his "30-year history of threatening harm to government officials who did not respond to his grievances," which culminated in Linehan threatening to firebomb the U.S. Embassy in Phnom Penh. *Linehan*, 835 F. App'x at 916. This led to his expulsion from Cambodia and his arrest upon returning to the United States. *Id*. at 915. Sims testified against Linehan at his criminal trial for the Cambodia threats, after which a jury convicted Linehan of transmitting a threat in foreign commerce. *Id.* Linehan was sentenced to 33 months' imprisonment. *Id.* at 916. We

affirmed Linehan's conviction on direct appeal.  *Id.* at 916–17.

While in federal prison, Linehan contacted a fellow inmate whom he believed was soon to be released and asked him to locate Sims's residential mailing address for the purpose of mailing a bomb to Sims's home.  In a series of handwritten messages that spanned nearly a month, Linehan provided instructions to his fellow inmate on how to find Sims and construct an explosive device.  Linehan promised to pay the inmate $200 up front, with a further $25,000 payment upon confirmation that the bomb had been sent to Sims.  The inmate turned on Linehan, notified the FBI, and agreed to cooperate.

An undercover agent posing as a willing bomber contacted Linehan, and Linehan arranged for the agent to be paid $200 in cash.  Linehan and the undercover agent engaged in several recorded conversations during which Linehan confirmed that he wanted the agent to send a bomb to Sims's house, and that he would pay $25,000 to see it done.  Linehan wanted the bomb to "blow Sims' f—ing head up" and "rip his lungs out."

For this, Linehan was charged with a new round of federal offenses: retaliating against a trial witness (Sims), in violation of 18 U.S.C. § 1513(a) (Count 1); soliciting the transportation  of an explosive device in commerce with the knowledge or intent that it would be used to kill, injure, or intimidate a person or damage property, in violation of 18 U.S.C. §§ 373(a) and 844(d) (Count 2); and soliciting the use of facilities of commerce with the intent that a murder be committed, in violation of 18 U.S.C. §§ 373(a) and 1958(a) (Count 3).

Before trial, Linehan moved to dismiss Counts 2 and 3 for failure to state an offense. He argued that the underlying offenses—§ 844(d) and § 1958(a)—did not have "as an element the use, attempted use, or threatened use of physical force," as § 373(a) requires. The district court denied Linehan's motion. Linehan unsuccessfully renewed his arguments concerning Counts 2 and 3 at the conclusion of the trial.

The jury acquitted Linehan on Count 1, but convicted him on Counts 2 and 3. Before his sentencing, Linehan renewed his arguments for acquittal for a third time, but the district court again denied his motion. The district court sentenced Linehan to consecutive 60-month sentences on Counts 2 and 3, for a total term of 120 months' imprisonment, to be followed by three years of supervised release. We review de novo the district court's denials of pretrial motions to dismiss and motions for acquittal. *United States v. Riggins*, 40 F.3d 1055, 1057 (9th Cir. 1994).

## II

Under the federal solicitation provision, which is entitled "Solicitation to commit a crime of violence,"

> Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned . . . .

18 U.S.C. § 373(a). To determine whether a defendant solicited a qualifying federal offense, we apply the categorical approach. *See United States v. Devorkin*, 159 F.3d 465, 469 (9th Cir. 1998) ("[W]e hold that § 373 requires a categorical approach, rather than a fact-based, case-by-case analysis of the actual result of the solicitation."); *see also, e.g.*, *United States v. Doggart*, 947 F.3d 879, 887–88 (6th Cir. 2020) (applying categorical approach to § 373(a)); *United States v. Gillis*, 938 F.3d 1181, 1201 (11th Cir. 2019) (per curiam) (same).

Under the categorical approach, we consider not the specific facts of a given conviction but whether the elements of the predicate offense meet the federal definition of a "crime of violence." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). "If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as . . . [a] predicate." *Borden v. United States*, 141 S. Ct. 1817, 1822 (2021) (plurality opinion).

The language used in § 373(a) is substantially similar to other "crime of violence" or "violent felony" provisions found elsewhere in the federal criminal code. *See* 18 U.S.C. §§ 16(a), 924(c)(3)(A), 924(e)(2)(B)(i). Although we have not before interpreted § 373(a)'s "elements clause" (also known as a "force clause") to any great extent, the parties agree that the same basic framework used for other elements clauses applies to the elements clause in § 373(a). Thus, the parties agree that the phrase "physical force" here, as elsewhere, means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). And the phrase "against property or against the person of another" requires that the crime solicited be one that requires purposeful or

knowing conduct, *see Borden*, 141 S. Ct. at 1826–28, or conduct evincing extreme recklessness, *see United States v. Begay*, 33 F.4th 1081, 1093–94 (9th Cir. 2022) (en banc).

Both the solicited offenses here have the necessary mens rea levels (knowledge or higher), for purposes of *Borden*. *See* 18 U.S.C. §§ 844(d), 1958(a). The key question is thus whether, under the categorical approach, they have as an element the use, attempted use, or threatened use of physical force.

### III

We begin with the transportation of an explosive, in violation of 18 U.S.C. § 844(d). The relevant portion of § 844(d) provides that:

> Whoever transports or receives, or attempts to transport or receive, in interstate or foreign commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property, shall be imprisoned for not more than ten years, or fined under this title, or both . . . .

*Id.* To convict a defendant of a completed offense under § 844(d), the government must prove that he "(1) transported or received in interstate commerce (2) any explosive (3) with the knowledge or intent that it would be used to kill, injure, or intimidate any individual" or damage any property. *United States v. Michaels*, 796 F.2d 1112, 1118 (9th Cir. 1986).

A

Linehan focuses some of his argument on that portion of § 844(d) that criminalizes the attempted transportation of an explosive. Relying on the Supreme Court's recent decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), which held that attempted Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c)(3)(A), Linehan argues that a person could be convicted of attempting to transport an explosive based on acts preparatory to such transportation that may not themselves involve the use, attempted use, or threatened use of physical force.

We need not explore that issue for the basic reason that Linehan was not convicted of soliciting the *attempted* transportation of an explosive; he was convicted of soliciting the completed offense. Section 844(d) punishes anyone who "transports or receives, *or* attempts to transport or receive, in interstate or foreign commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage" property. *Id*. (emphasis added). When a criminal statute is "divisible," meaning that it "comprises multiple, alternative versions of the crime," we apply what is known as the "modified categorical approach." *Descamps v. United States*, 570 U.S. 254, 261–62 (2013); *see also, e.g.*, *United States v. Buck*, 23 F.4th 919, 924 (9th Cir. 2022). In that instance, we then consult permitted sources to determine whether the defendant was convicted of that divisible portion of the predicate offense that qualifies as a categorical match to the elements clause. *See, e.g.*, *Johnson*, 559 U.S. at 144 (explaining that courts may consider "the trial record— including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms").

"A statute is divisible when it 'list[s] elements in the alternative and thereby define[s] multiple crimes.'" *Buck*, 23 F.4th at 924 (alterations in original) (quoting *Mathis v. United States*, 579 U.S. 500, 505 (2016)). But if a statute merely lists "alternative means of committing the same crime," it is not divisible. *Almanza-Arenas v. Lynch*, 815 F.3d 469, 478 (9th Cir. 2016) (en banc); *see also Mathis*, 579 U.S. at 505. In this case, we have little difficulty concluding that, at the very least, § 844(d) is divisible into completed and attempted offenses.

*Taylor* guides our analysis on this point. There, the Supreme Court interpreted the Hobbs Act robbery provision, which, like § 844(d), imposes criminal penalties for both the completed and attempted offense. 18 U.S.C. § 1951(a) ("Whoever . . . affects commerce . . . by robbery or extortion or *attempts or conspires so to do* . . . shall be fined under this title or imprisoned not more than twenty years, or both." (emphasis added)). In holding that the offense of *attempted* Hobbs Act robbery was not a crime of violence, the Court did not suggest that *completed* Hobbs Act robbery must be treated identically, even though both the attempted and completed offenses were included in the same provision. *See Taylor*, 142 S. Ct. at 2020 ("Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause."). And it is well established both pre- and post-*Taylor* that completed Hobbs Act robbery is a crime of violence under the elements clause. *See Jones v. United States*, 36 F.4th 974, 985 (9th Cir. 2022) ("Hobbs Act robbery is a crime of violence under the elements clause."); *United States v. Franklin*, 18 F.4th 1105, 1113 (9th Cir. 2021); *United States v. Baker*, 49 F.4th 1348, 1360 (10th Cir. 2022).

Similarly here, in the context of § 844(d) an attempt to commit the offense is distinct from the completed offense. The indictment and jury instructions thus make clear that Linehan was charged with and convicted of soliciting the completed transportation of an explosive.  Our task now is to compare the elements of a completed offense under § 844(d) to the elements clause in § 373(a), to see whether there is a categorical match.

B

We therefore turn to the language of § 373(a), which punishes the solicitation of a federal offense that "has as an element the use, attempted use, *or* threatened use of physical force against property or against the person of another."  18 U.S.C. § 373(a) (emphasis added).   Like other elements clauses, this statute is written in the disjunctive, meaning that a predicate offense can qualify as a categorical match so long as it requires one of the specified uses of force: actual, attempted, or threatened.  *See, e.g.*, *United States v. Ladwig*, 432 F.3d 1001, 1005 (9th Cir. 2005) ("By using the disjunctive 'or,' Congress explicitly provided that the [elements clause] applies to the 'threatened use of physical force against the person of another,' even absent actual or attempted physical force against the person of another." (citation omitted)).

The government now effectively concedes that under the Supreme Court's recent decision in *Taylor*, § 844(d) does not categorically involve the "threatened use" of physical force.  *Taylor* explained that "in the criminal law the word 'threat' and its cognates usually denote a communicated intent to inflict physical or other harm."  142 S. Ct. at 2022 (quotations omitted).  The government now acknowledges that under *Taylor*, transporting or receiving an explosive

under § 844(d) does not categorically require an outwardly communicated threat of harm.[1]

Assuming the threatened use of physical force is out, we are left with either the actual or attempted use of physical force. We need not decide whether a violation of the completed offense in § 844(d) requires the actual use of physical force because we conclude that at the very least, it requires the *attempted use* of such force.

1

The "attempted use" component of elements clauses has received little independent consideration in the case law. In part, that may be because pre-*Taylor*, we treated the attempted version of a crime as a crime of violence if the completed offense was so treated. *See United States v. Dominguez*, 954 F.3d 1251, 1262 (9th Cir. 2020). But *Taylor* confirms that analysis is not appropriate. *See Taylor*, 142 S. Ct. at 2021 (rejecting the government's argument that "because completed Hobbs Act robbery qualifies as a crime of violence, it follows that attempted Hobbs Act robbery

---

[1] We note, however, that *Taylor* considered the elements clause in 18 U.S.C. § 924(c)(3)(A). *Taylor* more narrowly interpreted the phrase "threatened use" of force to require a communicative act in part to avoid overlap with the now-invalid residual clause in § 924(c)(3)(B). *See* 142 S. Ct. at 2023–24. But § 373(a) has no accompanying residual clause, which raises the question whether the same narrowing of "threatened use" should control. If "threatened use" of force in § 373(a) is permitted a broader construction than in § 924(c)(3)(A), it would seem clear that a violation of § 844(d) would categorically qualify as the threatened use of physical force, given the imminent threat to persons and property when an explosive is transported with the intent to kill, injure, or intimidate, or damage property. We need not resolve this issue in light of our conclusion that a violation of § 844(d) categorically requires the "attempted use" of physical force.

does too"). *Taylor* thus invites a deeper engagement with both attempt offenses and the statutory phrase "attempted use" in an elements clause. The lack of case law on "attempted use" may also be due to the fact that many predicate offenses involve the *actual* use of physical force, and so by definition the attempted use. *See, e.g.*, *Buck*, 23 F.4th at 928 (holding that putting a mail carrier's life in jeopardy by the use of a dangerous weapon under 18 U.S.C. § 2114 "necessarily requires the use, attempted use, or threatened use of violent physical force").

But the "attempted use" of force comes into play here because § 844(d) is a somewhat different breed of crime. It treats as a completed offense the transportation or receipt in commerce of "any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any" property. 18 U.S.C. § 844(d). The explosive need not be detonated or cause harm; what is criminalized is the conveyance of the explosive in commerce with the knowledge or intent that it will be used for harmful purposes. *See Michaels*, 796 F.2d at 1118; *see also United States v. Strickland*, 261 F.3d 1271, 1273 (11th Cir. 2001) (affirming § 844(d) conviction of defendant accused of "manufacturing, transporting, and affixing a pipe bomb to the vehicle of his ex-wife's new husband").

The parties agree that in construing the "attempted use" of physical force under § 373(a), we should employ the traditional meaning of "attempt" as requiring an individual to engage in conduct that reflects a "substantial step" toward the wrongful end. *See, e.g.*, *Taylor*, 142 S. Ct. at 2020. In the context of § 373(a)'s elements clause, this means that the predicate offense must categorically punish conduct that constitutes a substantial step toward the use of physical

force, defined as "violent force," meaning "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. In this case, we conclude that someone who solicits a violation of § 844(d) categorically solicits the attempted use of physical force: transporting or receiving an explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any person, or damage property, is categorically a substantial step toward the use of violent force.

To constitute a substantial step, conduct "must go beyond mere preparation and must be strongly corroborative of the firmness of a defendant's criminal intent." *United States v. Smith*, 962 F.2d 923, 930 (9th Cir. 1992) (quotations omitted). That is, "the defendant's conduct must (1) advance the criminal purpose charged, and (2) provide some verification of the existence of that purpose." *United States v. Goetzke*, 494 F.3d 1231, 1235–36 (9th Cir. 2007) (per curiam) (quoting *Walters v. Maass*, 45 F.3d 1355, 1358–59 (9th Cir. 1995)).

Transporting or receiving an explosive under § 844(d) is better characterized as a substantial step toward the use of force as opposed to a mere preparation for the use of force. *See United States v. Soto-Barraza*, 947 F.3d 1111, 1120 (9th Cir. 2020) (noting that courts are more likely to find that defendants have attempted an offense when they have "equipped themselves with the items needed to commit the offense"). The statutory definition of "explosive" is critical to our analysis. For purposes of § 844(d), the term "explosive" means any device or chemical "in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion." 18 U.S.C. § 844(j).

As the last sentence of § 844(j) confirms, the device must be readily capable of explosion through a basic act, such as ignition by fire. An explosion is inherently violent, capable of causing death or serious injury to persons and serious damage to property. By its nature, it deploys violent force. Transporting or receiving an explosive brings it closer to its contemplated or potential detonation. Conveying such a device is a highly dangerous undertaking that requires deliberate and considered action. We do not think it is necessary to imagine every possible type of explosive device and the myriad ways in which they could be triggered to recognize that a prepared explosive is capable of serious physical harm.

Section 844(d) further requires that the person who transports or receives the explosive must do so in service of a violent objective: "with the knowledge or intent that it will be used to kill, injure, or intimidate" any person or damage property. Killing, injuring, and damaging property inherently involves the use of physical force. And given the nature of an explosive device, acting with knowledge or intent to intimidate through transport or receipt of an explosive involves the attempted use of force as well. To "intimidate" is not merely to scare. *See United States v. Gutierrez*, 876 F.3d 1254, 1257 (9th Cir. 2017) (per curiam) (explaining that intimidation involves the use of force "in such a way that would put an ordinary, reasonable person in fear of bodily harm" (quoting *United States v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990))). As then-Judge Breyer explained, § 844(d) intimidation requires some degree of coercive conduct because "the statute's basic purpose suggests that it was not designed to punish pure 'frightening' without any element of intent to injure, or to affect future conduct, or to cause some other sort of relatively serious

harm." *United States v. Norton*, 808 F.2d 908, 909 (1st Cir. 1987) (Breyer, J.); *see also id.* ("Nothing in the statute's history suggests an intent to make unlawful the transportation of a firecracker across a state line solely for the purpose of scaring a relative, friend, or neighbor.").

To violate § 844(d), one must thus at a minimum intend to intimidate by deploying a readied explosive capable of causing death, injury, or damage to property. This level of intimidation connotes violent force—or, in Justice Breyer's words, force "likely to cause any significant public harm." *Id.* at 910. As the Supreme Court has explained, "force capable of causing physical pain or injury" under the elements clause "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019). Taking all these points together, the person who violates § 844(d) categorically takes a substantial step toward using "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140.

This is consistent with *Taylor*, which notes that for a predicate offense to qualify as the "'use' or 'attempted use' of 'physical force against the person or property of another,'" the government must "prove that the defendant took specific actions against specific persons or their property." 142 S. Ct. at 2023. Here, § 844(d) requires the government categorically to prove that a defendant took the specific action of transporting or receiving a readied explosive device with the intent or knowledge that it would be used to kill, injure, or intimidate a person or damage property. This substantial step toward a completed crime of violence is concrete and defined and does not merely

"sweep[] in conduct that poses an abstract risk to community peace and order." *Id.*

The example employed in *Taylor* further illustrates how this case is distinguishable from attempted Hobbs Act robbery. *Taylor* described a hypothetical "Adam" who, with the goal of robbing a store, "buys a ski mask, plots his escape route, and recruits his brother to drive the getaway car." 142 S. Ct. at 2021. Adam also drafts a threatening note that is a bluff, and is arrested when he "crosses the threshold into the store." *Id.* Adam has attempted to commit Hobbs Act robbery but has not attempted to use physical force because his note was a bluff and he never delivered it. *Id*.

A completed violation of § 844(d) does not involve conduct analogous to the "Adam" hypothetical, such as making a shopping list of bomb materials. Instead, it punishes someone who actually transports or receives a readied explosive knowing that it *will* be used to kill, injure, or intimidate, or damage property. Adam could have been bluffing, and the note itself was not capable of violent force. *See id*. Here, by contrast, § 844(d)'s "will be used" requirement creates a more imminent connection to a violent aim. And the explosive, unlike Adam's handwritten note, is readily capable of violent force. Thus, we conclude that a violation of § 844(d) requires the defendant to have undertaken a substantial step toward the use of violent force. This means that a violation of § 844(d) categorically requires the attempted use of physical force within the meaning of § 373(a).

Our holding is consistent with our most analogous precedent, *United States v. Collins*, 109 F.3d 1413 (9th Cir. 1997). There, we considered whether mailing an item with intent to kill or injure another, 18 U.S.C. § 1716, qualified as

a crime of violence under 18 U.S.C. § 924(c)(1). *Id.* at 1418–19. That predicate offense is like § 844(d) in that it criminalizes transmitting a dangerous item with an unlawful intent but does not require that the contemplated harm transpire. We had little difficulty in *Collins* concluding that a violation of § 1716 had as an element "the use *or attempted use* of physical force." *Id.* at 1419 (emphasis added).

In holding that § 844(d) constitutes a crime of violence, we also align ourselves with other courts which have treated § 844(d) accordingly, albeit without analysis. *See Worman v. Entzel*, 953 F.3d 1004, 1006 (7th Cir. 2020) (relying on our decision in *Collins* and noting that the "mailing of a pipe bomb [in violation of § 844(d)] constituted the predicate crime of violence for purposes of the § 924(c) charge"); *United States v. Barefoot*, 754 F.3d 226, 247 (4th Cir. 2014) (noting that "receiving an explosive with the intent that it be used to kill, injure, or intimidate, or to damage or destroy buildings, manifestly would have been a crime of violence according to the parties' mutual understanding"); *Strickland*, 261 F.3d at 1274 (treating a violation of § 844(d) as a predicate offense under § 924(c)).

Linehan, meanwhile, has not identified any case holding that § 844(d) is not a crime of violence. And to the extent one could devise obscure hypotheticals suggesting that it might be theoretically possible to carry out the completed offense in § 844(d) without the attempted use of force, that "legal imagination" cannot carry the day. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (categorical approach requires "realistic probability" of prosecution); *United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1150 (9th Cir. 2020) (noting that "the categorical approach should not be applied in a legal vacuum").

2

Linehan nonetheless argues that a violation of § 844(d) cannot categorically qualify as an offense that requires the attempted use of force because attempt traditionally requires the mens rea of specific intent, *see, e.g.*, *Braxton v. United States*, 500 U.S. 344, 351 n.\* (1991), and a violation of § 844(d) only requires "knowledge."  Here we think Linehan reads too much into the "attempted use" of force clause, but his argument fails even on its own terms.

Section 373(a), to return to the key provision, punishes one who, "under circumstances strongly corroborative of that intent," intentionally solicits another to "engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another."  18 U.S.C. § 373(a).  This statutory provision not only imposes its own mens rea requirement, but (as we noted above) requires that the underlying predicate offense itself have a certain elevated mens rea.  In *Borden*, the Supreme Court held that the phrase "*against* the person of another," "when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual."  141 S. Ct. at 1825 (emphasis added).  This means that predicate offenses with a mens rea of purpose or knowledge are sufficient, but predicate offenses that merely require reckless conduct are not.  *Id.* at 1826.  In *Begay*, our en banc court addressed a question left open in *Borden* and held that a mens rea of extreme recklessness also qualifies as a crime of violence under the elements clause.  33 F.4th at 1093–94.

Section 844(d) satisfies *Borden* because it requires the defendant to have transported or received an explosive with "the *knowledge or intent* that it will be used to kill, injure, or

intimidate any individual or unlawfully to damage or destroy." 18 U.S.C. § 844(d) (emphasis added). But Linehan maintains that if the "attempted use" of force in the elements clause is the source of § 373(a) liability, we must import a specific intent mens rea that is associated with attempt offenses, so that a predicate offense like § 844(d) that requires merely "knowing" misconduct is insufficient. We do not think Linehan is correct.

Although § 373(a)'s elements clause invokes the concept of "attempt," § 373(a) has its own mens rea ("intent") and is not itself an attempt offense. Nor does it require a predicate offense that is itself an attempt crime. The underlying offense also must already have a heightened mens rea—knowledge or intent, or at the very least extreme recklessness. *See Borden*, 141 S. Ct. at 1825; *Begay*, 33 F.4th at 1093–94. Linehan cites no authority for the proposition that "attempted uses" of force in an elements clause require predicate offenses with an *additional* and even *higher* mens rea, which would confusingly layer multiple mens rea requirements into the same elements clause. We thus do not read § 373(a) as incorporating a further mens rea requirement specific to attempt.

This does not mean that the phrase "attempted use" of force is without content, however. As we explained above, an "attempted use" of force does require a predicate crime that, at minimum, categorically requires the offender to engage in a substantial step toward the use of violent physical force. Reading § 373(a) in context and as part of the broader elements clause, we merely conclude that "attempted use" of force does not also impose a further mens rea requirement beyond the one that the elements clause already requires.

We note, though, that even if Linehan were correct that the "attempted use" of force means that the predicate offense must require a mens rea commensurate with that required for attempt crimes, Linehan's argument still fails. Although attempt classically requires specific intent, *see Braxton*, 500 U.S. at 351 n.*, "[t]raditionally, 'one intends certain consequences when he desires that his acts cause those consequences or knows that those consequences are substantially certain to result from his acts.'" *Tison v. Arizona*, 481 U.S. 137, 150 (1987) (quoting W. LaFave & A. Scott, *Criminal Law* § 28, p. 196 (1972)); *see also* W. LaFave, *Substantive Criminal Law* § 5.2(a) (3d. ed. 2017) (explaining the "traditional view" that specific intent lies "(1) when [a person] consciously desires [a] result, whatever the likelihood of that result happening from his conduct; and (2) when he knows that that result is practically certain to follow from his conduct, whatever his desire may be as to that result"). Thus, attempt requires "an intent to do an act or to bring about a certain consequence which would in law amount to a crime." LaFave, *Substantive Criminal Law* § 11.3.

Linehan points to authorities noting that a distinction between "purposeful" and "knowing" conduct can be relevant for "inchoate offenses such as attempt and conspiracy." *United States v. Bailey*, 444 U.S. 394, 405 (1980). But that distinction is important because "a purposeful mental state may help separate criminal conduct from innocent behavior." *Borden*, 141 S. Ct. at 1823 n.3; *see also Bailey*, 444 U.S. at 405 (explaining that the purpose of a "heightened mental state" for inchoate offenses such as attempt is to "separat[e] criminality itself from otherwise innocuous behavior").

Here, however, § 844(d) does not require mere "knowledge" of some bare facts, nor does it criminalize the mere knowing transportation or receipt of an explosive. Instead, it requires someone to transport or receive in commerce a readied explosive "with the knowledge or intent that it *will be used* to kill, injure, or intimidate" a person or damage property.  18 U.S.C. § 844(d) (emphasis added).  A person who acts with such knowledge is not engaged in innocent behavior.  Thus, we think § 844(d) contains a mens rea requirement that enables it categorically to qualify as an attempted use of force, even on Linehan's mistaken view that "attempted uses" of force require a higher mens rea.

In sum, when Linehan solicited the completed offense in § 844(d), he solicited a crime of violence under § 373(a). We affirm Linehan's conviction under Count 2.[2]

## IV

We lastly consider whether a violation of 18 U.S.C. § 1958(a) qualifies as a crime of violence under § 373(a). The government now concedes it does not.  That concession is well-taken.

Section 1958(a) provides:

> Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended

---

[2] We note that § 373(a) contains an even further protection for criminal defendants: they must not only intend to solicit a crime of violence but must do so "under circumstances *strongly corroborative* of that intent." 18 U.S.C. § 373(a).  Linehan does not raise any challenge to the sufficiency of the evidence under this portion of the statutory provision.

victim) to use the mail or any facility of
interstate or foreign commerce, with intent
that a murder be committed in violation of the
laws of any State or the United States as
consideration for the receipt of, or as
consideration for a promise or agreement to
pay, anything of pecuniary value, or who
conspires to do so, shall be fined under this
title or imprisoned not more than twenty
years, or both . . . .

18 U.S.C. § 1958(a). To be convicted of violating § 1958(a),
an offender must (1) have traveled or caused another to
travel in interstate commerce, or used or caused another to
use an instrumentality of interstate or foreign commerce, or
conspired to do the same; (2) have done so with the intent
that a murder be committed; and (3) have intended that the
murder be committed in exchange for something of
pecuniary value. *See* Ninth Cir. Model Crim. Jury
Instruction No. 16.7 (2022); *see also United States v.
Phillips*, 929 F.3d 1120, 1123 (9th Cir. 2019).

Although it is natural to assume that when "murder" is
referenced in a criminal statute the offense qualifies as a
crime of violence, the United States has conceded on appeal
that § 1958(a) is, in fact, not a predicate offense under the
elements clause of § 373(a). The government's concession
is based on the Solicitor General's same concession several
months ago in *Grzegorczyk v. United States*, 142 S. Ct. 2580
(2022). As the Solicitor General explained in that case, §
1958(a)

require[s] only that a defendant travel in, or
use a facility of, interstate commerce with the
requisite criminal intent; it does not require

that a defendant actually enter into a murder-for-hire agreement, that he carry out or otherwise attempt to accomplish his criminal intent, or that the contemplated murder be attempted or accomplished by another person.

Br. of United States at 9, *Grzegorczyk*, 142 S. Ct. 2580 (No. 21-5967) (quotations and emphasis omitted).

We agree with this analysis.[3]  And we further note that our holding here is consistent with those of other courts to have addressed the issue.  *See United States v. Cordero*, 973 F.3d 603, 625–26 (6th Cir. 2020) (agreeing with the government's concession that § 1958 is not a crime of violence under U.S.S.G. § 4B1.1(a) because it is "apparent under the categorical approach that a violation of § 1958 can occur without the 'use, attempted use, or threatened use of physical force' against another" (quoting U.S.S.G. § 4B1.2(a)(1))); *United States v. Boman*, 873 F.3d 1035, 1042 (8th Cir. 2017) (explaining that § 1958 is not a crime of violence under § 924(c)'s elements clause); *Fernandez v. United States*, 2021 WL 5113406, at *7 (S.D.N.Y. Nov. 3, 2021); *Qadar v. United States*, 2020 WL 3451658, at *2 (E.D.N.Y. June 24, 2020); *Dota v. United States*, 368 F. Supp. 3d 1354, 1360–61 (C.D. Cal. 2018); *United States v. Herr*, 2016 WL 6090714, at *4 (D. Mass. Oct. 18, 2016).

---

[3] Although the Supreme Court declined to remand in *Grzegorczyk* as the Solicitor General requested, it did so not because it rejected the United States's concession but because the defendant had entered an unconditional guilty plea that precluded him from challenging his sentence.  142 S. Ct. at 2580–81 (Kavanaugh, J., respecting the denial of certiorari).

For these reasons, we reverse Linehan's conviction on Count 3 for soliciting a violation of § 1958.[4]

\*          \*          \*

We affirm Linehan's conviction on Count 2, reverse his conviction on Count 3, and remand for resentencing consistent with this opinion.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

---

[4] We do not address whether the aggravated offenses of § 1958(a)—which impose longer terms of imprisonment if personal injury or death results—should be treated differently. *See United States v. Runyon*, 994 F.3d 192, 201–03 (4th Cir. 2021).